UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x

In re:

Andy Monplaisir,

                      Debtor.

---------------------------------------------------------------x

     :
     :
     :
     :
     :
     :
     :
     :

**NOT FOR PUBLICATION**

Chapter 13

Case No. 25-11982 (JPM)

**MEMORANDUM OPINION AND ORDER OVERRULING DEBTOR'S CLAIM NO. 5 OBJECTION AND GRANTING TRUSTEE'S MOTION TO DISMISS IN PART AND RE-CONVERTING DEBTOR'S CHAPTER 13 CASE TO CHAPTER 7**

**JOHN P. MASTANDO III**
**UNITED STATES BANKRUPTCY JUDGE**

## I. INTRODUCTION

Before the Court is the Chapter 13 Trustee's (the "**Trustee**") *Motion to Dismiss* (the "**Motion**") [Dkt. No. 48] dated January 13, 2026. The Motion asserts that the Chapter 13 bankruptcy petition of the debtor Andy Monplaisir (the "**Debtor**") should be dismissed under 11 U.S.C. § 1307(c).[1]

On February 19, 2026, the Chapter 7 Trustee and creditor, Salvatore LaMonica (the "**Chapter 7 Trustee**") filed the *Chapter 7 Trustee's Limited Response to the Chapter 13 Trustee's Application to Dismiss the Debtor's Chapter 13 Case* (the "**Chapter 7 Trustee's Joinder**") [Dkt. No. 56]. On February 19, 2026, creditor JMMB Bank ("**JMMB**") filed the *Response by JMMB Bank (Jamaica) Limited to the Chapter 13 Trustee's Motion to Dismiss the Debtor's Chapter 13 Case* ("**JMMB's Joinder**") [Dkt. No. 57]. Both the Chapter 7 Trustee and JMMB agree with the Trustee that dismissal is warranted but request re-conversion to Chapter 7 in lieu of dismissal.

The Debtor filed the *Debtor's Opposition to Chapter 13 Trustee's Motion to Dismiss* (the "**Debtor's Response**") [Dkt. No. 63] and the *Debtor's Response and Supplemental Liquidation Analysis in Opposition to Secured Creditor and Chapter 7 Trustee's Request for Reconversion to Chapter 7* (the "**Debtor's Opposition to Reconversion**") [Dkt. No. 62] on March 2, 2026.

The Trustee filed the *Status Letter re: the Trustee's Pending Motion to Dismiss (ECF No. 48)* (the "**Status Letter**") [Dkt. No. 65] on March 4, 2026.

On March 4, 2026, JMMB filed the *Supplemental Response by JMMB Bank (Jamaica) Limited to the Chapter 13 Trustee's Motion to Dismiss the Debtor's Chapter 13 Case* ("**JMMB's**

---

[1] References to "Rule __" are to the Federal Rules of Civil Procedure. References to "Bankruptcy Rule __" are to the Federal Rules of Bankruptcy Procedure. References to "Local Rule" are to the Local Bankruptcy Rules for the Southern District of New York. References to "Bankruptcy Code" are to Title 11 of the U.S. Code (11 U.S.C).

**Reply**") [Dkt. No. 66] and the Chapter 7 Trustee filed *the Chapter 7 Trustee's Supplemental Response in Further Support of the Trustee's Limited Response to the Chapter 13 Trustee's Motion to Dismiss the Debtor's Chapter 13 Case* (the "**Chapter 7 Trustee's Reply**") [Dkt. No. 67].

On April 14, 2026, the Trustee filed an additional status update, the *Status Letter re: the Trustee's Pending Motion to Dismiss (Dkt. No. 48)* (the "**Second Status Letter**") [Dkt. No. 76].

## II.    BACKGROUND

On November 25, 2024, the Debtor filed a joint petition for Chapter 7 bankruptcy relief (the "**Chapter 7 Case**") with his wife Coleen Monplaisir ("**Ms. Monplaisir**").  [Case No. 24-12033, Dkt. No. 1].  On May 8, 2025, the Debtor and Ms. Monplaisir filed a *Motion to Convert Chapter 7 Case* (the "**Motion to Convert**") [*Id.*, Dkt. No. 51].  The Debtor sought conversion in the hope of confirming a Chapter 13 Plan that would allow the Debtor and Ms. Monplaisir to keep the real property they own in Jamaica.[2]  [Dkt. No. 70, p. 2].  The Chapter 7 Trustee filed *the Chapter 7 Trustee's Opposition to the Debtor's Motion to Convert their Chapter 7 Case to One Under Chapter 13 Pursuant to 11 U.S.C. § 706(a) and Fed. R. Bankr. Procedure 1017(f)(2)* (the "**Chapter 7 Trustee's Opposition to Conversion**") [*Id.*, Dkt. No. 52].  The Chapter 7 Trustee's Opposition to Conversion alleged that the Debtor's debts exceeded the statutory cap for Chapter 13 cases under 11 U.S.C. § 109(e), rendering the Debtor ineligible for conversion.  [*Id.*, p. 1].  On June 16, 2025, the Court in the Chapter 7 Case entered a *Memorandum Opinion and Order Denying Debtors' Motion to Convert Chapter 7 Case* (the "**Order Denying Conversion**") [Dkt. No. 54].

That same day, the Debtor and Ms. Monplaisir filed the *Motion to Reopen and Reconsider* (the "**Motion to Reconsider**") [*Id.*, Dkt. No. 55].  The Motion to Reconsider asserted that because

---

[2] The Debtor's real property in Jamaica (the "**Jamaica Property**") is known as Cherry Gardens, No. 5 Cherry Drive, Lot 1, Unit A in the Parish of Saint Andrew, Kingston 8, Jamaica.  [Case No. 25-11982, Dkt. No. 42, p. 1].

one of the Debtor's debts was a duplicate, the Debtor's debts did not exceed the statutory cap, thus making the Debtor eligible for Chapter 13 conversion.  [*Id.*, p. 4].  On June 30, 2025, the Chapter 7 Trustee filed the *Chapter 7 Trustee's Opposition to the Debtors' Motion to Reopen and Reconsider Andy Monplaisir's Motion to Convert His Chapter 7 Case to One Under Chapter 13* (the "**Chapter 7 Trustee's Opposition to Reconsideration**") [Dkt. No. 56].  The Debtor filed the *Reply to Chapter 7 Trustee's Opposition to the Debtors' Motion to Reopen and Reconsider Andy Monplaisir's Motion to Convert His Chapter 7 Case to One Under Chapter 13* (the "**Debtor's Reply to the Opposition to Reconsideration**") [Dkt. No. 58] on July 7, 2025.  On September 11, 2025, the Court in the Chapter 7 Case entered the *Order on Andy Monplaisir's Motion for Reconsideration* (the "**Conversion Order**") [Dkt. No. 70] granting the Motion to Reconsider, severing the Debtor and Ms. Monplaisir's Chapter 7 cases, and converting the Debtor's Chapter 7 case to one under Chapter 13.  [Conversion Order, p. 2].

The Notice of the Chapter 13 Bankruptcy Case was entered on the docket on September 18, 2025.  [Case No. 25-11982, Dkt. No. 2].  On September 25, 2025 the Debtor filed two Chapter 13 Plans (the "**Plan**").  [Dkt. No. 4-5].

On October 7, 2025, LaMonica Herbst & Maniscalco, LLP ("**LH&M**") as counsel to the Chapter 7 Trustee, filed a priority claim for administrative fees from the Debtor's previous Chapter 7 case, totaling $99,937.63 (the "**LH&M Claim**").  [Claims Register, Claim No. 5].  The Debtor objected to the LH&M Claim and filed *Debtor Objection to Proof of Claim No. 5 Filed by Counsel for Former Chapter 7 Trustee* on October 8, 2025 (the "**Debtor's First Claim Objection**") [Dkt. No. 6].

On October 27, 2025, the Chapter 7 Trustee filed the *Chapter 7 Trustee's Objection to Confirmation of Andy Monplaisir's Chapter 13 Plan* (the "**Chapter 7 Trustee's Objection to**

3

**Confirmation**") [Dkt. No. 9].  In the Chapter 7 Trustee's Objection to Confirmation, the Chapter 7 Trustee alleged that the Debtor's Plan was unconfirmable for three reasons: (1) the Plan failed to include correct plan payment dates as required under 11 U.S.C. § 1322(d); (2) the Plan failed to include payment of the Chapter 7 Trustee's administrative claim, and (3) the Plan failed to provide for treatment of pre-petition and post-petition arrears owed to JMMB.  [Objection to Confirmation, p. 3].  On October 27, 2025 JMMB filed the *Objection to JMMB Bank (Jamaica) Limited to Confirmation of the Debtor's Chapter 13 Plan* ("**JMMB's Objection to Confirmation**") [Dkt. No. 10, 12].  JMMB alleged that the Plan failed to adequately address the JMMB claims or to comply with 11 U.S.C. §§ 1322(b)(5), 1325(a)(5), 1325(a)(6), and 1328(a)(1).

On November 11, 2025, JMMB registered two claims (together, the "**JMMB Claims**") in the Debtor's Chapter 13 proceeding.  Claim No. 7 asserts $80,495.00 in secured claims and $90,788.00 in total for an automobile.  [Claims Register, Claim No. 7].  Claim No. 8 ("**Claim No. 8**") asserts $74,7172.67 in total secured claims for the mortgage on the Jamaica Property.  [Claims Register, Claim No. 8].  On December 5, 2025, the Debtor filed the *Debtor's Objection to Secured Creditor's Proof of Claim No. 7 and No. 8* (the "**Debtor's Second Claim Objection**") [Dkt. No. 36] objecting to the JMMB Claims and asserting that "the arrears cited in JMMB's filed Proof of Claims …. contradicts the lender's internal records."  [Debtor's Second Claim Objection, p. 1].

On November 24, 2025, LH&M responded to the Debtor's First Claim Objection and filed the *Motion to Allow Claim 5 of LaMonica Herbst and Maniscalco, LLP as an Administrative Expense Claim Against the Debtor's Chapter 13 Estate* (the "**Motion to Allow Claim No. 5**") [Dkt. No. 27].  A hearing was then held on December 18, 2025 (the "December 18th Hearing") to address the Debtor's First Claim Objection and the Motion to Allow Claim No. 5.  The Debtor's First Claim Objection and the Motion to Allow Claim No. 5 were taken under advisement at the

4

December 18th Hearing.

On December 19, 2025, JMMB responded to the Debtor's Second Claim Objection and filed the *Response by JMMB Bank (Jamaica) Limited to the Debtor's Objection to Secured Creditor's Proof of Claim No. 7 and No. 8* (the "**Motion to Allow Claims No. 7-8**") [Dkt. No. 42]. JMMB asserts that "there is no merit [to] the Debtor's contention that he does not owe arrears in connection with JMMB's secured claims No. 7 …. and No. 8." [*Id.*, p. 2].

On January 13, 2026 the Trustee filed the Motion requesting dismissal under 11 U.S.C. §1307(c). [Dkt. No. 48]. That same day, the Debtor filed: (1) *Amended Chapter 13 Plan* [Dkt. No. 49]; (2) *Schedules A/B, I, J, and Coversheet* (the "**Debtor's Schedules**") [Dkt. No. 50], and (3) *Amended Chapter 13 Plan* (the "**First Amended Plan**") [Dkt. No. 51]. On January 15, 2026, the Court held a hearing (the "**January 15th Hearing**") on the Chapter 7 Trustee's Objection to Confirmation and JMMB's Objection to Confirmation. [Dkt. No. 22]. The matters were adjourned to February 26, 2026 to allow all the pending motions to be heard together.

On February 19, 2026, the Chapter 7 Trustee and JMMB joined the Trustee in requesting dismissal under 11 U.S.C. §1307(c) by filing their respective joinders. [Chapter 7 Trustee's Joinder; JMMB's Joinder]. The Chapter 7 Trustee and JMMB assert that the Debtor's proposed Chapter 13 Plan is unfeasible, and both parties request that the Debtor's case be re-converted back to Chapter 7 rather than dismissed. The Chapter 7 Trustee asserts that "reconversion to Chapter 7, rather than dismissal, is in the best interest of the creditors of [the Debtor's] estate." [Chapter 7 Trustee's Joinder, p. 3]. The Chapter 7 Trustee states that "upon reconversion, a Chapter 7 Trustee would be appointed, and the Jamaica Property [could] be liquidated for the benefit of the creditors of [Mr. Monplaisir's] estate as well as creditors of [Ms. Monplaisir's] estate." [*Id.*]. Raising a similar argument for re-conversion, JMMB Bank states that "reconversion to [C]hapter 7 would

5

be a better option" as "the only real asset available for distribution to creditors is the real property located in Jamaica that is jointly owned by the Debtor and his wife …. subject to JMMB's first mortgage." [JMMB's Joinder, p. 2]. JMMB states that re-conversion would allow "for [the] sale of the jointly owned asset to be administered by a single judge in a single proceeding" and best serve creditor interests. [*Id*.].

The Debtor filed another *Amended Chapter 13 Plan* (the "**Second Amended Plan**") [Dkt. No. 60] on February 23, 2026. The Court held a hearing on the Motion and other pending matters on February 26, 2026 (the "**February 26th Hearing**").[3] At the February 26th Hearing, JMMB Bank expressed their concern as to the Second Amended Plan, namely that the Debtor's Second Amended Plan failed to address the JMMB Claims in their entirety. [February 26th Hearing]. The Trustee also continued to prosecute the Motion, as the Second Amended Plan had not cured the issues raised by the Debtor's Chapter 13 Plan. [*Id.*]. The Court then instructed the Trustee to submit a status report on the pending issues by March 5, 2026. [*Id.*].

On March 2, 2026, the Debtor filed the Debtor's Response objecting to the Motion, the Chapter 7 Trustee's Joinder, and JMMB's Joinder. [Dkt. No. 62, 63]. The Status Letter submitted by the Trustee on March 4, 2026 reiterated the Trustee's dismissal request and identified the continuing deficiencies in the Debtor's submissions. [Status Letter]. JMMB filed JMMB's Reply on March 4, 2026. [JMMB's Reply]. The Chapter 7 Trustee filed the Chapter 7 Trustee's Reply on March 5, 2026. [Chapter 7 Trustee's Reply].

On March 9, 2026, the Debtor filed the *Debtor's Supplemental Objection to Secured Creditor's Proof of Claims and Request for Reclassification of Secured Claim as Unsecured*

---

[3] At the February 26th Hearing, the Debtor stated that the Debtor was under the impression the Motion had been withdrawn by the Trustee the week prior and that dismissal was no longer being sought. The Trustee explained that there had been a duplicate filing of the Motion and that the Motion to Dismiss listed at Dkt. No. 46 had been withdrawn while the Motion at Dkt. No. 48 was still pending.

*Pursuant to 11 U.S.C. §§ 502 and 506 and Determination of Secured Status* (the "**Supplemental Motion Against JMMB's Claims**") [Dkt. No. 68]. The Debtor then filed three documents on March 31, 2026; (1) an *Amended Chapter 13 Plan* (the "**Third Amended Plan**") [Dkt. No. 70]; (2) the *Chapter 13 Debtor's Certifications Regarding Domestic Support Obligations and Section 522(q)* (the "**Domestic Support Obligation Affidavit**") [Dkt. No. 71], and (3) the *Notice of Non-Opposition and Request for Entry of Order* (the "**Request for Order Reclassifying Creditor JMMB**") [Dkt. No. 72].

JMMB responded on April 1, 2026, by filing the *Response of JMMB Bank (Jamaica) Limited ("JMMB") to the Debtor's Supplemental Objection to JMMB's Proofs of Claim; and to the Debtor's Notice of Non-Opposition* ("**JMMB's Response to Debtor's Supplemental Motion**") [Dkt. No. 74].

Onn April 6, 2026, the Debtor filed the *Debtor's Reply in Further Support of Supplemental Objection and in Opposition to Creditor's Procedural Arguments* (the "**Debtor's Reply in Support of Debtor's Supplemental Motion**") [Dkt. No. 75].

On April 14, 2025, JMMB filed the Objection by JMMB Bank (Jamaica) Limited to Confirmation of the Debtor's Fourth Chapter 13 Plan ("**JMMB's Objection to Confirmation'**) [Dkt. No. 77].

### III.    LEGAL STANDARD

#### A. Administrative Claim Objection Standard

Pursuant to 11 U.S.C. § 503(a) of the Bankruptcy Code, an "entity may timely file a request for payment of an administrative expense, or may tardily file such request if permitted by the court for cause." 11 U.S.C. § 503(a). 11 U.S.C. § 503(b) provides, in pertinent part:

> (b) After notice and a hearing, there shall be allowed administration expenses, other than claims allowed under section 502(f) of this title, including—

(1)(A) the actual necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case;

…

(2) compensation and reimbursement awarded under section 330(a) of this title

11 U.S.C. § 503(b).  The list enumerated in 11 U.S.C. § 503(b) is not exclusive.  *In re Maghazeh*, 315 B.R. 650, 654 (Bankr. E.D.N.Y. 2004).  "Several courts interpreting this section of the Bankruptcy Code note that the use of the word 'including' at the beginning indicates that the list of expenses allowed provided examples and is not meant to be exhaustive." *Id*. (quoting *In re Pappas*, 277 B.R. 171 (Bankr. E.D.N.Y. 2002).

Under Federal Rule of Bankruptcy Procedure 3001(f), a properly filed proof of claim is "prima facie evidence of the validity and amount of a claim." *In re Kerner*, 599 B.R. 751, 757 (Bankr. S.D.N.Y. 2019) (quoting Fed. R. Bankr. P. 3001(f)). This presumption places "the initial burden of persuasion" on the objecting party to produce evidence sufficient to rebut the claim's prima facie validity. *In re Oneida Ltd*., 400 B.R. 384, 389 (Bankr. S.D.N.Y. 2009). The objecting party must produce "evidence equal in force to the prima facie case … which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency." *In re Cocoa Services*, *L.L.C.*, No. 17-11936 (JLG), 2018 WL 1801240, at *16 (Bankr. S.D.N.Y. Apr. 13, 2018) (quoting *In re Allegheny Int'l, Inc*., 954 F.2d 167, 173-74 (3d Cir. 1992)).

If the objecting party meets this burden, the burden shifts back to the claimant to prove the claim by a preponderance of the evidence. *See In re Rockefeller Ctr. Props*., 272 B.R. 524, 539 (Bankr. S.D.N.Y. 2000); *accord Raleigh v. Ill. Dept. of Revenue*, 530 U.S. 15, 20 (2000). If the objecting party fails to meet its burden, "the [proof of] claim should be allowed as filed." *In re Motors Liquidation Co.*, No. 11-4180 (NRB), 2012 WL 124581, at *3 (S.D.N.Y. Jan. 17, 2012) (citing *In re Adelphia Commc'ns Corp*., No. 02-41729 (REG), 2007 WL 601452, at *5 (Bankr.

8

S.D.N.Y. Feb. 20, 2007)).

## B. Dismissal or Conversion Standard

Section 1307(c) of the Bankruptcy Code authorizes a Court, on request of a party in interest or the United States Trustee and after a notice and hearing, to dismiss a Chapter 13 case or convert it to Chapter 7 "for cause," whichever "is in the best interests of creditors and the estate."  11 U.S.C. § 1307(c).  The statute includes eleven grounds that constitute "cause":

(1)    unreasonable delay by the debtor that is prejudicial to creditors;

(2)    nonpayment of any fees and charges required under chapter 123 of title 28;

(3)    failure to file a plan timely under section 1321 of this title;

(4)    failure to commence making timely payments under section 1326 of this title;

(5)    denial of confirmation of a plan under section 1325 of this title and denial of a request made for additional time for filing another plan or a modification of a plan;

(6)    material default by the debtor with respect to a term of a confirmed plan;

(7)    revocation of the order of confirmation under section 1330 of this title, and denial of confirmation of a modified plan under section 1329 of this title;

(8)    termination of a confirmed plan by reason of the occurrence of a condition specified in the plan other than completion of payments under the plan;

(9)    only on request of the United States trustee, failure of the debtor to file, within fifteen days, or such additional time as the court may allow, after the filing of the petition commencing such case, the information required by paragraph (1) of section 521(a);

(10)    only on request of the United States trustee, failure to timely file the information required by paragraph (2) of section 521(a); or

(11)    failure of the debtor to pay any domestic support obligation that first becomes payable after the date of the filing of the petition.

11 U.S.C. § 1307(c).  "This list is 'not exhaustive,' but exemplary." *In re Jensen*, 425 B.R. 105, 109 (Bankr. S.D.N.Y. 2010) (quoting COLLIER ON BANKRUPTCY ¶ 1307.04 (16th Ed. 2016)).  The power to convert or dismiss a case under § 1307(c) is discretionary. *In re Burgos*, 476 B.R. 107, 111 (Bankr. S.D.N.Y. 2012) (citing *Howard v. Lexington Invs.*, 284 F.3d 320, 323 (1st Cir. 2002).

Section 1307(c)(1) states that in a Chapter 13 case "unreasonable delay by the debtor that is prejudicial to creditors" is grounds for conversion to Chapter 7 or dismissal. *In re Burgos*, 476 B.R. at 111 (citing 11 U.S.C. § 1307(c)(1)).

9

IV.    **DISCUSSION**

A.    **The Debtor's First Claim Objection is Denied and the Motion to Allow Claim No. 5 is Granted**

Having considered the Debtor's First Claim Objection, the Motion to Allow Claim No. 5, and the parties' arguments at the December 18th Hearing, the Court finds that Trustee's Claim is a valid administrative claim and is thus allowed. The Court denies the Debtor's First Claim Objection and grants the Motion to Allow Claim No. 5.

i.    **The LH&M Claim is Allowed under 11 U.S.C. § 503(b)(2)**

The Court agrees with LH&M that the LH&M Claim qualifies as an administrative expense and is thus allowed under 11 U.S.C. § 503(b)(2).

On October 7, 2025, LH&M filed the LH&M Claim for $99,937.63. [Claim Register, No. 5-1]. LH&M then amended the LH&M Claim to $52,725.13 on October 17, 2025, and further amended it to $41,058.12 on November 24, 2025. [Claim Register, No. 5-2, 5-3]. The LH&M Claim accounted for the services rendered by LH&M on behalf of Chapter 7 Trustee in the Chapter 7 Case from January 6, 2025 through September 11, 2025 (the "**Fee Period**").[4]

In the Debtor's First Claim Objection, the Debtor asserts that the LH&M Claim is an unauthorized compensation request that requires court approval before any fees can be awarded. [Debtor's First Claim Objection, p. 2]. The Debtor states that the LH&M Claim should be disallowed because "the former Chapter 7 Trustee did not file a fee application or obtain an order from the court in the [Chapter 7 Case] authorizing compensation." [*Id.*]. The Debtor asserts that "given no order has been entered approving the former trustee's 'Chapter 7 Administrative fees'" that the "claim does not constitute an allowed administrative expense." [*Id.*]. Finally, the Debtor

---

[4] The LH&M Claim accounts for the separation of the cases between the Debtor and Ms. Monplaisir. The LH&M Claim includes one-half of the total amount of fees for services rendered by LH&M in the Chapter 7 Case.

objects to LH&M or the Chapter 7 Trustee's filings in the case, alleging that "upon conversion of the [Debtor's] case from Chapter 7 to Chapter 13, the former Chapter 7 Trustee's authority to act on behalf of Andy's estate was terminated." [*Id.*].

On November 21, 2025, LH&M filed the *First Interim Application of LaMonica Herbst & Maniscalco, LLP, General Counsel to the Chapter 7 Trustee, for Allowance of Compensation and Reimbursement of Expenses* ("**LH&M's Fee Application**") [Case No. 24-12033, Dkt. No. 78]. LH&M's Fee Application lists the total amount of professional services rendered by the Chapter 7 Trustee as $74,355.00 and the total amount of expenses incurred as $7,761.24, totaling $82,116.24. [*Id.*, p. 6]. LH&M explains that the LH&M Claim was amended down to account for the severance of cases between the Debtor and Ms. Monplaisir. [*Id.*, p. 5]. LH&M states that the LH&M Claim has been amended to $41,058.12, which is "an amount equal to one-half the amount" owed by both the Debtor and Ms. Monplaisir. [*Id.*].

On February 12, 2026, the Court in the Chapter 7 Case issued a *Memorandum Opinion and Order Approving the First Interim Fee Application of LaMonica Herbst & Maniscalco, LLP as General Counsel for the Chapter 7 Trustee, and Overruling the Debtor's Objection* (the "**Fee Award Order**") [Case No. 24-12033, Dkt. No. 95]. The Fee Award Order ruled on the entirety of LH&M's Fee Application, awarding $82,116.24 to LH&M. [*Id.*] The amount awarded included the Debtor's portion of the expenses owed to LH&M, which comprises the entirety of the LH&M Claim in this here case. [*Id.*]. The Court in the Chapter 7 Case held that LH&M's "services were reasonable at the time they were performed" and "necessary services for the preservation of the estate." [*Id.*, p. 8]. Therefore, the Debtor's argument that the Court in the Chapter 7 Case has yet to approve the underlying fees comprising the LH&M Claim and that thus the "claim [cannot] constitute an allowed administrative expense" is invalid. [Debtor's First Claim Objection, p. 2].

11

Further, the Court disagrees with the Debtor's argument that LH&M or the Chapter 7 Trustee lack the necessary authority to file a claim in this current proceeding. "When a case is converted from one under Chapter 7 to one under Chapter 13, the trustee and his retained professionals become creditors of the Chapter 13 debtor's estate." See *In re Starling*, 359 B.R. 901, 919 at fn. 4 (Ill. N.D. Bankr. 2007); *In re Wells*, 87 B.R. 732, 736 (Ga. N.D. Bankr. 1988) ("To the extent unpaid compensable services have been rendered and expenses incurred in [a] Chapter 7 case, the Chapter 7 Trustee or his counsel become claimants of the debtor's Chapter 13 estate"). LH&M was retained as counsel to the Chapter 7 Trustee in the Chapter 7 Case on January 6, 2025. [Motion to Allow Claim No. 5, p. 4]. As recently determined by the Court in the Chapter 7 Case, LH&M rendered legal services to the Chapter 7 Trustee throughout the Fee Period and is entitled to compensation under 11 U.S.C. § 330. Accordingly, this Court finds that LH&M has the necessary authority to file an administrative claim in this case.

The Court finds that the Debtor has not met its burden to produce evidence that rebuts the proof of the LH&M Claim. Thus, the LH&M Claim is a valid administrative claim and is allowed under 11 U.S.C. § 503(b)(2).

**B.** **The Motion is Granted In Part and the Debtor's Chapter 13 Case is Re-Converted to Chapter 7**

After reviewing the parties' various filings, the Debtor's amended Chapter 13 Plans, and the Status Letter, the Court has identified two continuing deficiencies: (1) failure to submit a feasible Chapter 13 Plan and (2) failure to provide the Trustee with 2024 New York State Tax Returns. [Status Letter, p. 1-2]. The Court will grant the Motion in part under 11 U.S.C. § 1307(c)(1) and re-convert the Debtor's Chapter 13 case to Chapter 7.

**i.** **Dismissal or Conversion is Warranted under 11 U.S.C. § 1307(c)(1)**

12

The Court agrees with the Trustee that the Debtor's sustained deficiencies and untimely filings have resulted in an "unreasonable delay that is prejudicial to the rights of creditors" under Section 1307(c)(1).

### 1. Deficient Documents

Upon consideration of the Status Letter submitted by the Trustee and the Third Amended Chapter 13 Plan, the Court finds that the Debtor's Third Amended Chapter 13 Plan is unfeasible and unconfirmable under 11 U.S.C. § 1325(a).[5]

First, the Debtor's plan is not adequately funded. The Second Amended Chapter 13 Plan, which the Trustee evaluated prior to the February 26th Hearing and the filing of the Status Letter, included a total plan payout of $202,014.00. [Second Amended Chapter 13 Plan, p. 3]. In the Status Letter, the Trustee noted that "as the administrative, priority and secured claims total $185,305.53, the total amount that would need to be paid into the Plan is at least $205,506.93 once the Trustee's fee is taken into account." [Status Letter, p. 1]. The Third Amended Chapter 13 Plan submitted by Debtor on March 31, 2026, proposes to pay claimants even less over the course of the 60 month plan. [Third Amended Plan, p. 3]. The Third Amended Chapter 13 Plan lists a total plan payment payout of $167,310.00, leaving a $38,196.93 gap between the Trustee's calculations and the Debtor's proposed plan. [*Id.*].

In addition, according to the Debtor's Schedules, the Debtor has a disposable income of $203.54. [Debtor's Schedules, p. 17]. This leaves a $546.46 gap between the Debtor's disposable income available to pay into a plan and the $750.00 initial monthly plan payments listed in the Third Amended Chapter 13 Plan. [Third Amended Chapter 13 Plan, p. 3]. Further, this is also insufficient to satisfy the increased monthly payments of $2,100.00 in March 2027 or $3,885.00

---

[5] The Court will consider the Debtor's most recently submitted Chapter 13 Plan, the Third Amended Chapter 13 Plan, listed at Dkt. No. 70 when identifying deficiencies warranting dismissal or conversion under Section 1307(c).

in October 2027.[6]  [*Id.*].  Accordingly, the Debtor will not be able to make the Chapter 13 plan

payments as required by 11 U.S.C. § 1325(a)(6).

Second, the Debtor has improperly listed JMMB as an unsecured creditor in the Third

Amended Chapter 13 Plan.  [*Id.*].  In the Third Amended Chapter 13 Plan, the Debtor lists both of

the JMMB Claims, Claim No. 7 and Claim No. 8, as unsecured claims.  [*Id.*].  On March 31, 2026,

the Debtor filed the Request for Order Reclassifying Creditor JMMB.  [Request for Order

Reclassifying Creditor JMMB, p. 1].  This was filed in connection with the Supplemental Motion

Against the JMMB Claims filed by Debtor on March 9, 2026, which requested entry of an Order

reclassifying the JMMB Claims as unsecured.  [Supplemental Motion Against JMMB's Claims, p.

1].  The Debtor stated that "the Debtor [had] filed a [Supplemental Motion Against JMMB's

Claims] seeking reclassification of the claims of JMMB Bank from secured to unsecured pursuant

to 11 U.S.C. §§ 502 and 506(a) …. [and] the deadline to respond has passed, and no objection,

response, or request for an extension has been filed by any of the parties …. [ and that] the

[Supplemental Motion Against JMMB's Claims] is [thus] unopposed."  [*Id.*].

However, the Debtor is incorrect in asserting that JMMB did not oppose reclassification as

an unsecured creditor.  The motion filed by the Debtor on March 31, 2026 is not the original motion

filed by the Debtor on this claims issue.  The Debtor originally objected to the JMMB Claims on

December 5, 2025 by filing the Debtor's Second Claim Objection.  [Debtor's Second Claim

Objection].  The Debtor had stated that "the Debtor does not dispute that JMMB Bank Ltd. is the

secured creditor for both the mortgage and the motor-vehicle loan held by the [Debtor]."  [*Id.*, p.

1].  Instead, the Debtor had objected to JMMB's claimed arrearage.  [*Id.*].  JMMB filed their

---

[6] The Third Amended Chapter 13 Plan lists a three-part plan payment schedule. The first was proposed to run from
October 2025 to February 2027 and pay $750.00 a month into the plan.  The second was proposed to run from
March 2027 to September 2027 and pay $2,100.00 a month into the plan. The third was proposed to run from
October 2027 to September 2030 and pay $3,885.00 a month into the plan.

response, the Motion to Allow Claims No. 7-8, on December 19, 2025.[7]  In the Motion to Allow Claims No. 7-8, JMMB Bank explicitly states that "the Debtor does not contest that JMMB is the Debtor's secured creditor" but "does primarily dispute the accuracy of the arrears cited in JMMB's proofs of claims."  [Motion to Allow Claims No. 7-8].

Further, the Supplemental Motion Against JMMB's Claims is the first time the Debtor raises an issue with JMMB's creditor classification.  [Supplemental Motion Against JMMB's Claims, p. 1].  Though the Supplemental Motion Against JMMB's Claims is not an independent motion, itt is best construed as a reply to the Debtor's Second Claim Objection and may be procedurally untimely.  The Debtor argues that JMMB has not demonstrated an "enforceable secured status within bankruptcy."  [*Id.*, p. 4].  The Debtor also claims that JMMB is attempting to "bypass the governing legal framework for the [Jamaica] Property" by seeking "reconversion relief that requires enforcing its mortgage interest through a process dependent on the bankruptcy court's ability to transfer title."  [*Id.*].

In JMMB's Reply, JMMB refutes the Debtor's argument and explains that the Court in the Chapter 7 Case had already approved the sale of the Jamaica Property.  [JMMB's Reply, p. 5].  JMMB includes a copy of an order issued by the Court in the Chapter 7 Case on March 20, 2025, which had authorized the sale of the Jamaica Property.  [JMMB's Reply, Exhibit A].  Consequently, the Court does not find that JMMB is attempting to "bypass the governing legal framework for the Jamaica Property."  [Supplemental Motion Against JMMB's Claims, p. 4].  In addition, the Debtor does not include any evidence to demonstrate that JMMB is not a secured creditor.  The Court does not agree that JMMB should be reclassified as an unsecured creditor at this stage.  Thus the Court

---

[7] In the Motion to Allow Claims No. 7-8, JMMB includes a list of exhibits to rebut the Debtor's presumption that the arrearage was inaccurate.  JMMB includes a declaration of Loan Recoveries Officer for JMMB, Tyrone Spencer attesting to the Debtor's loan and transactions records with JMMB.  [Motion to Allow Claims No. 7-8, Ex. 1].  JMMB also includes the Debtor's Statement of Accounts for the Jamaica Property and the car loan.  [*Id.*, Ex. 2-3].

15

finds the classification of the JMMB Claims as unsecured in the Third Amended Chapter 13 Plan improper.

The Debtor has thus failed to submit a feasible Chapter 13 Plan. The Debtor was informed at the February 26th Hearing that the Second Amended Chapter 13 Plan was not feasible and did not properly address or classify creditor claims. [February 26th Hearing]. After the Status Letter was filed on March 4, 2026, the Debtor waited over a month to file an amended plan.[8] As discussed above, the Third Amended Chapter 13 Plan filed on March 31, 2026 remains unfeasible and unconfirmable pursuant to Section 1325(a). [Third Amended Chapter 13 Plan].

## 2. **Missing Tax Returns**

The Debtor also failed to provide the Trustee with the Debtor's 2024 New York State Tax Returns as required pursuant to 11 U.S.C. § 521(f)(1). The Trustee originally listed this omission in the Motion filed on January 13, 2026. [Motion, p. 3]. The Debtor was again reminded at the February 26th Hearing that the 2024 New York State Tax Returns had been improperly submitted by the Debtor. [February 26th Hearing]. In the Status Letter submitted by the Trustee after the February 26th Hearing, the Trustee further explained "we do not have a copy of the New York State returns as the copy we received back in December 2025 were not redacted and therefore, pursuant to our office protocol, they were deleted from our system." [Status Letter, p. 2]. It does not appear that the Debtor has cured this omission.

The Debtor has had over six months from commencement of this case to produce a feasible Chapter 13 Plan and properly submit the 2024 New York State Tax Returns.[9] For these reasons,

---

[8] The Court notes that further amendments to a plan would be futile as the Debtor's disposable income listed in the Debtor's Schedules is too low to fund a plan that adequately addresses the Debtor's secured claims.

[9] The Court also notes that the Debtor filed the Domestic Support Obligation Certification required under 11 U.S.C. § 1328(a) on March 31, 2026, over two months after the Motion noted the deficiency and six months after the case commenced.

the Court finds that sufficient "cause" has been shown to establish "unreasonable delay that is prejudicial to creditors." 11 U.S.C. § 1307(c)(1).

### ii. Re-Conversion to Chapter 7 is in the Best Interests of Creditors

Now that sufficient "cause" has been established, the Court will consider whether dismissal or conversion is in the "best interest of creditors and the estate." 11 U.S.C. § 1307(c). In the Motion, the Trustee requests dismissal of the Debtor's Chapter 13 case. [Motion, p. 3]. Subsequent filings by the Trustee, including the Status Letter, reiterate a request for dismissal under Section 1307(c) and do not explicitly discuss conversion. [Status Letter]. Other parties in interest—the Chapter 7 Trustee and JMMB—have specifically requested re-conversion to Chapter 7. [Chapter 7 Trustee's Joinder; JMMB's Joinder].

The Chapter 7 Trustee requests re-conversion to allow for the sale of the Jamaica Property, which is jointly owned by the Debtor and Ms. Monplaisir. [Chapter 7 Trustee's Reply, p. 3]. The Chapter 7 Trustee states "reconversion of [the Debtor's] case to one under [C]hapter 7 would allow a liquidation sale of the Jamaica Property and realize an immediate benefit to the creditors of [the Debtor and Ms. Monplaisir's] estate, including counsel to the Trustee and JMMB." [*Id.*]. JMMB asserts a similar argument explaining that the Court has already ordered the sale of the Jamaica Property in Ms. Monplaisir's Chapter 7 case. [JMMB's Reply, p. 7]. JMMB asserts that "in light of the previous purchase offers received by the Chapter 7 Trustee when he attempted to sell the Jamaica Property during the Joint Chapter 7 Case, it would appear to be in the best interest of creditors for that sale now to proceed." [*Id.*].

Further, the consolidation of the Debtor and Ms. Monplaisir's cases would create a singular forum for creditors to prosecute their claims. The Court agrees with JMMB that "since [the] principal asset in both bankruptcy cases is jointly owned by the two Monplaisirs, it makes sense

17

for their Joint Chapter 7 Case to be restored as a joint case in order for the sale of the jointly owned asset to be administered by a single judge in a single proceeding." [*Id.*].

The Court finds that it is in the "best interest of the creditors" to re-convert the Debtor's Chapter 13 case to Chapter 7. 11 U.S.C. § 1307(c).

## V.   CONCLUSION

For the forgoing reasons, the Debtor's First Claim Objection is **DENIED**, the Motion to Allow Claim No. 5 is **GRANTED**, the Motion is **GRANTED IN PART** and the Debtor's Chapter 13 case is **RE-CONVERTED** to Chapter 7. All pending motions are **DENIED AS MOOT.**

**IT IS SO ORDERED**.

Dated: April 15, 2026
New York, New York

 /s/      John P. Mastando III
HONORABLE JOHN P. MASTANDO III
UNITED STATES BANKRUPTCY JUDGE

18